**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1306**

MARK R. LEE, M.D.,

    Plaintiff – Appellant,

    v.

WEST VIRGINIA UNIVERSITY MEDICAL CORPORATION, d/b/a University
Health Associates,

    Defendant – Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at
Clarksburg.  Thomas S. Kleeh, Chief District Judge.  (1:22-cv-00156-TSK)

Argued:  January 27, 2026                                    Decided:  July 10, 2026

Before HARRIS and BENJAMIN, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Harris wrote
the opinion, in which Judge Benjamin and Senior Judge Floyd joined.

**ARGUED:**  Marie Milie Jones, JONESPASSODELIS, PLLC, Pittsburgh, Pennsylvania,
for Appellant.  Justin M. Harrison, JACKSON KELLY PLLC, Charleston, West Virginia,
for Appellee.  **ON BRIEF:**  Laura H. Lorensen, JACKSON KELLY PLLC, Charleston,
West Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

Dr. Mark Lee alleges that his former employer, University Health Associates, removed him from his position as Chair of a medical school neurosurgery department because of his age, retaliated against him when he reported age discrimination, and failed to comply with multiple contractual obligations regarding his employment. Raising claims under federal and West Virginia law, Lee sued in federal district court. The district court granted summary judgment to University Heath Associates on all of Lee's claims.

For the reasons given below, we affirm the district court in substantial part, holding that the defendant is entitled to judgment as a matter of law as to most of Lee's claims. But we disagree with the district court in one respect, finding that genuine disputes of fact preclude the district court's grant of summary judgment on Lee's claim that University Health Associates unlawfully retaliated against him by accelerating his removal from the Chair position. Accordingly, we vacate the district court's judgment in part and remand for further proceedings consistent with this opinion.

## I.

### A.

This case began in 2018, when Dr. Mark Lee, then 59 years old, was hired by West Virginia University ("WVU") and University Health Associates ("UHA"). The ultimate decision to hire Lee was made by Dr. Clay Marsh, a Vice President at WVU, who appointed Lee as Chair of the Department of Neurosurgery at WVU's School of Medicine. In that role, Lee reported directly to and "serve[d] at the will and pleasure" of Marsh and a second

2

executive, Dr. Ali Rezai. J.A. 468, 472. At the same time, Lee was hired as a pediatric neurosurgeon by UHA, which provides support services to WVU faculty members who practice at West Virginia hospitals. The terms and conditions of Lee's employment were set out in an appointment letter from WVU and in UHA's Professional Services Agreement, both of which were executed in the summer of 2018.

The claims at issue here concern Lee's role as Chair of Neurosurgery. By the spring of 2020, issues around Lee's performance had arisen, and it is undisputed that two senior administrators verbally reported those issues to Lee and counseled him about his performance. First, in March of 2020, an administrator met with Lee to discuss his performance review for 2019 and raised concerns about multiple issues, including (but not limited to) Lee's absenteeism, his limited involvement with satellite campuses, his management of surgeons within his department, and his failure to follow internal procedures. Next was Rezai, who had similarly developed concerns about Lee's absenteeism, lack of engagement, and attitude. Rezai also met with Lee in the spring of 2020, encouraging him to "participate more" and emphasizing that he "need[ed] to really change some of [his] ways[.]" J.A. 1610.

By March of 2021, a year later, Marsh and Rezai concluded that Lee had shown little improvement, and they decided to ease him out of the Chair position. To do so, they proposed the creation of a new position for Lee: Executive Director of the WVU Medicine Children's Neuroscience Center. By his own account, Lee, who had previously expressed interest in a more entrepreneurial and less "custodial" role, J.A. 1541, initially responded positively, though he understood the new job would require him to step down as Chair of

3

Neurosurgery. So Lee and Marsh met in May of 2021 to discuss the possible transition. It was at this meeting, according to Lee, that Marsh first mentioned age, "stat[ing] that he wanted to recruit someone much younger than [Lee] who would have a 10-15 year 'runway' to stay in the [Chair] position, and that they should be earlier in their career[.]" J.A. 190. Ultimately, Lee declined the new Executive Director role, which he came to view as a "demotion." J.A. 1058.

By June of 2021, Marsh made clear to Lee that he nevertheless would have to leave his position as Chair. As Lee put it in his deposition, Marsh "unequivocally" informed him in May or June of 2021 that he would be "replace[d]" as Chair. J.A. 969. And in a conversation in June of 2021, Lee says, Marsh presented him with various scenarios for implementing this decision. According to Lee, one option would have allowed him to remain as Chair for two more years. According to Marsh, he contemplated Lee staying on as Chair for just one more year, while assisting in recruiting his replacement. But it is undisputed that there was no option on the table that had Lee leaving immediately or before the summer of 2022. During this June 2021 discussion, in Lee's telling, Marsh again "expressed his desire to get someone younger and earlier in their career" for the Chair position, "with more energy and interest in the job." J.A. 190.

Negotiations stalled over issues of compensation, and to break the impasse, the parties – Lee, Marsh, and Rezai – met on July 22, 2021, in Marsh's office. What happened at this meeting is important to the timeline of Lee's retaliation claim, but it is also disputed. According to Marsh and Rezai, Lee stonewalled any discussion of transition planning and abruptly walked out of the meeting, and at that point, they decided that Lee had to be

4

removed immediately. According to Lee, the meeting concluded with Marsh saying that further discussions would be held among "the lawyers," J.A. 1060–61, and Lee left the meeting unaware of any decision to accelerate his removal as Chair and believing that negotiations would continue.

A week later, on July 29, 2021, Lee's counsel sent a letter to WVU and UHA proposing "terms and conditions" under which Lee would assist in transitioning to a new Chair while maintaining his current positions. J.A. 205. That letter also contained Lee's first complaint of age discrimination: "Shockingly, on more than one occasion, Dr. Lee was explicitly told by Dr. Marsh that in seeking to find a new Chair of Neurosurgery, the University was looking for someone 'younger with more of a runway.' This totally inappropriate and illegal comment exhibits age discrimination, plain and simple." J.A. 206.

After discussions among the parties' counsel, Lee's attorney circulated a second letter on August 12, 2021. This letter repeated the allegations of age discrimination raised in the first. It also suggested that WVU and UHA, in response to the first letter, had indicated a new "desire to move forward with a transition in the position of Chair on an accelerated schedule," instead of giving Lee the option to remain as Chair through June of 2022. J.A. 208. Such a "change in position," the letter warned, would "arguably [be] retaliatory," coming after reports of age discrimination in the earlier letter. J.A. 209. Finally, Lee's attorney conveyed that Lee was willing to forgo filing a lawsuit if WVU and UHA agreed to pay him $1.87 million and satisfied some other terms.

Counsel for WVU and UHA responded by email on August 18, 2021. "After much thought about the issues raised in [the] August 12, 2021 letter," the email opened, "WVU has decided to remove Dr. Lee as Chair of the Department of Neurosurgery" and to do so almost immediately – "as of September 1, 2021." J.A. 207. According to the email, Lee had "not met expectations in his role as Chair." *Id.* But Lee would continue his employment as a neurosurgeon under the UHA Professional Services Agreement and as a faculty member at WVU.

Following Lee's removal, his colleague, Dr. Peter Konrad, was named Interim Chair and ultimately Chair. In January of 2022, Lee resigned from his clinical and faculty roles at UHA and WVU and accepted a position at another university.

Lee, 59 years old when appointed Chair in 2018, was 62 years old when he was removed from that position in 2021. Konrad, who replaced Lee, is around the same age as Lee. And Marsh, who all agree was the final decisionmaker in the hiring and firing of Lee, is a few months older than Lee.

**B.**

After receiving right-to-sue letters, Lee commenced this action in the Northern District of West Virginia, naming WVU, WVU's School of Medicine, and UHA as defendants. His five-count complaint asserted claims against UHA for age discrimination and retaliation under both the Age Discrimination in Employment Act ("ADEA") and the West Virginia Human Rights Act ("WVHRA"), as well as a breach-of-contract claim

6

arising out of his employment agreement with UHA.  Against the WVU defendants, Lee only brought claims for age discrimination and retaliation under the WVHRA.[1]

The crux of Lee's complaint was that WVU and UHA, operating as joint employers, removed Lee as Chair of Neurosurgery because of his age or in retaliation for reporting Marsh's allegedly age-discriminatory remarks.  And even if the removal itself was not retaliatory, Lee alleged, the defendants retaliated against him when they accelerated the timeline for his removal – from the summer of 2022, at the earliest, to September 1, 2021 – and again when they reduced his compensation, benefits, and administrative support immediately following his removal, which Lee claimed was tantamount to a constructive discharge.

The WVU defendants moved to dismiss for lack of subject matter jurisdiction, asserting that they were entitled to sovereign immunity.  The district court agreed and dismissed Lee's claims against the WVU defendants without prejudice.  *Lee v. W. Va. Univ.*, 2023 WL 3029262, at *1, *4–6 (N.D.W. Va. Apr. 20, 2023).

The remaining defendant, UHA, then filed a motion for summary judgment, which the district court granted in full.  *Lee v. W. Va. Univ.* ("*Lee II*"), 2025 WL 649734, at *1 (N.D.W. Va. Feb. 27, 2025).  In resolving this motion, the court declined to address whether WVU and UHA should be considered joint employers, with each responsible for

---

[1] As the parties agree, age discrimination and retaliation claims are governed by the same analytical framework and legal standards under the ADEA and the WVHRA.  *See Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 197 (W. Va. 2016) (age discrimination); *Linger-Long v. Milvet*, 2025 WL 2614062, at *2 (W. Va. Sep. 10, 2025) (retaliation); *Daniels v. DAL Glob. Servs., LLC*, 903 S.E.2d 588, 596 (W. Va. Ct. App. 2024) (same).

the actions of the other, as Lee urged. *See id.* at \*12 (noting that the district court did not "make any finding regarding whether WVU and UHA are integrated employers or operate under a joint employer theory"). Instead, the court made two more limited assumptions for purposes of its decision: first, that Marsh's alleged age-based comments were attributable to UHA, and second, that Lee's removal as Chair of Neurosurgery at WVU qualified as an adverse action for purposes of his employment with UHA. *Id.* at \*6.

To support his age discrimination claim, Lee argued primarily that Marsh's remarks – that the next Chair should be "younger," "earlier in their career," and willing to stay in the job for ten to fifteen years – constituted direct evidence of discriminatory intent. The district court disagreed. Those comments, the court emphasized, were made in May and June of 2021, after Marsh had decided to ease Lee out of the Chair position and during discussions in which Marsh believed that Lee was interested in taking on a new role at WVU and in helping to recruit his successor. *Id.* at \*8. At that time and in that context, any expressed preference by Marsh for "someone younger with a longer runway" for the Chair position did not reflect age-based animus against Lee but instead related to the recruitment of his hypothetical successor. *Id.*

Nor, the district court concluded, could Lee make out an age discrimination claim based on circumstantial evidence. It was clear from the record, the court reasoned, that Lee was "not meeting WVU's legitimate expectations" as to the Chair position. *Id.* Moreover, both Lee's replacement as Chair – who was also in his sixties – and Marsh – who was responsible for Lee's hiring and firing – were "in the same protected age group"

8

as Lee. *Id.* at \*9. On that record, the court held, no reasonable jury could infer that the real reason for Lee's removal was age discrimination. *Id.*

The district court found that Lee's retaliation claims, too, failed as a matter of law. *Id.* at \*10. Lee's first claim – that he was removed from the Chair position because of the allegations of age discrimination raised in his lawyer's letters of July 29 and August 12, 2021 – was defeated by timing, the court explained: Marsh and Rezai had begun the removal process months before those letters were sent, seeking to transition Lee to another position in May and then informing him in June that he would be replaced. *Id.* at \*10–11. Given those undisputed facts, Lee could not establish a causal nexus between his protected activity – the July 29 and August 12 letters – and his removal.

The district court also considered Lee's alternative retaliation claim: that it was only after his July 29 and August 12 complaints of age discrimination that Marsh and Rezai decided to *accelerate* his removal as Chair, removing him in September of 2021 instead of in the summer of 2022 as originally contemplated. But the record, the court concluded, was to the contrary, showing that Rezai and Marsh decided to expedite Lee's removal and appoint an interim replacement at the end of the July 22, 2021, meeting – again, before the July 29 and August 12 letters – because Lee "walked away and did not agree to assist in the transition." *Id.* at \*11. And that sequence of events, the court reasoned, precluded a

9

finding that it was the July and August letters, and not Lee's conduct at the meeting, that caused the acceleration of Lee's removal.[2] *Id.*

Finally, as to Lee's breach-of-contract claim, the court determined that the three purported contractual obligations Lee invoked were, respectively, not incorporated within the governing employment agreement, not applicable in the circumstances presented here, and refuted by the agreement's express terms. *Id.* at *12.

Having found no genuine dispute as to any material fact, the district court entered summary judgment for UHA on all of Lee's claims. This timely appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, we must construe the facts in the light most favorable to Lee, as the non-movant, and draw all reasonable inferences in his favor. *Evans*, 80 F.3d at 958. If, after reviewing the record as a whole, we find that a reasonable jury could return a verdict for

---

[2] The district court did not separately analyze Lee's retaliation claim predicated on his alleged constructive discharge, likely because, as we explain below, it rises or falls with Lee's claim that his removal as Chair was retaliatory. But the court made clear that this claim, too, failed as a matter of law. *Lee II*, 2025 WL 649734, at *10.

10

Lee, then a genuine factual dispute exists and summary judgment must be denied. *Id.* at 959.

After carefully examining the lengthy record in this case, we agree with the district court that summary judgment is appropriate as to Lee's age discrimination claim, his claims of retaliation predicated on his removal as Chair and his purported constructive discharge, and his breach-of-contract claim. But we part ways with the district court on Lee's claim that the acceleration of the timeline for his removal constituted unlawful retaliation. On that claim, we conclude that there are genuine and material disputes of fact that preclude the district court's grant of summary judgment. We therefore vacate the district court's judgment in part and remand for proceedings consistent with this opinion.

**A.**

We agree with the district court that Lee has not made out a claim for age discrimination under the ADEA or the WVHRA. Like the district court, we will assume that the allegedly discriminatory comments made by Marsh, a Vice President at WVU, may be attributed to remaining defendant UHA, and that Lee's removal as Chair of Neurosurgery at WVU qualifies as an adverse action with respect to his employment at UHA. *See Lee II*, 2025 WL 649734, at *6. Even so, the record does not support a finding that age was a but-for cause of Lee's removal as Chair.

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, a plaintiff must establish, through direct or circumstantial evidence, that age constituted a but-for cause of his employer's adverse

11

action.  *Bandy v. City of Salem*, 59 F.4th 705, 710 (4th Cir. 2023).  As noted above, age discrimination claims under the WVHRA are analyzed using the same framework as ADEA claims and are subject to the same but-for causation standard.  *Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 193, 195, 197 (W. Va. 2016).  Because Lee cannot make the requisite showing on this record, UHA is entitled to summary judgment on this claim.

1.

To make his case, Lee relies first on what he characterizes as direct evidence – "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and [] bear directly on the contested employment decision."  *Bandy*, 59 F.4th at 711.  According to Lee, Marsh's statements in May and June of 2021 that he was looking for someone "younger" and "earlier in their career" than Lee, and who was willing to serve as Chair of Neurosurgery for ten to fifteen years, constitute direct evidence of age discrimination.

Like the district court, we disagree.  This is in part because of the substance of the comments themselves.  As the district court explained, statements referring to age do not always reflect forbidden age-based animus or discrimination.  *Lee II*, 2025 WL 649734, at *7. Sometimes they simply acknowledge "a fact of life":  that an employee's age, seniority, and length of service may bear on his employer's succession planning, a legitimate business interest.  *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511–12 (4th Cir. 1994) (statement that "there comes a time when we have to make way for younger people" creates no inference of age discrimination); *see Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (recognizing that decisions based on length of service do not necessarily constitute

12

age discrimination). As a result, isolated comments that recognize the effects of age and longevity on a company's long-range planning generally do not amount to direct evidence of unlawful age discrimination. *See*, *e.g.*, *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (statement that "young, bright, junior scientists" should be protected from reduction in force refers to "process of generational change" and does not evince age discrimination), *abrogated in part on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177–80 (2009); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir. 1992) (same for statement about need to "attract newer, younger people"). The statements at issue here – that Marsh sought to replace Lee with someone "younger" with a ten to fifteen year "runway" to serve as Chair – appear to fall within that category.

The context in which the statements were made is also important. *Mereish*, 359 F.3d at 337 (instructing courts to "consider the context in which [the allegedly discriminatory] statements were made"). Seemingly benign references to seniority or longevity can be "code" for age discrimination. *Clay Printing*, 955 F.2d at 942. But the context here confirms that "this is not such a case." *Id.* By Lee's own account, Marsh first shared his desire to hire someone "younger" during their May 2021 meeting – after Lee had expressed interest in moving to the new position offered him at WVU, and during a discussion about a "transition of [the] [N]eurosurgery [C]hair position." J.A. 190. And, again by Lee's own account, when Marsh made similar comments again in June of 2021, he was presenting options for Lee's exit from the Chair position that anticipated Lee's assistance in recruiting a successor. So by the time the statements were made, as the district court explained, it is undisputed that Marsh expected Lee to be leaving the Chair position;

13

the relevant discussions were not about whether Lee should remain as Chair but about the transition process and Lee's eventual successor. *See Lee II*, 2025 WL 649734, at *8. In that context, Marsh's comments can only reasonably be understood as references to succession planning and the potential tenure of Lee's replacement, rather than the decision to remove Lee in the first place. *See Bandy*, 59 F.4th at 711 (comments are not direct evidence of age discrimination if they do not relate to the employment decision at issue).

2.

Nor can Lee establish age discrimination by relying on circumstantial evidence. At this stage of the inquiry, we consider all of the record evidence – including Marsh's alleged statements. *See Hollis v. Morgan State Univ.*, 153 F.4th 369, 381–82 (4th Cir. 2025) (statements that do not qualify as direct evidence may nevertheless be relevant circumstantial evidence). Here again, we agree with the district court that on this record, no reasonable jury could find that, but for his age, Lee would have been retained as Chair.[3]

We start from some basic and undisputed facts. Lee was 59 years old when he was appointed Chair, with Marsh's approval. He was 62 years old when he was removed as Chair three years later, again by Marsh – who is a few months *older* than Lee. Taken

---

[3] The district court analyzed Lee's circumstantial case under the familiar burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lee II*, 2025 WL 649734, at *7–9. But as we explained in *Bandy*, whether a plaintiff relies on direct or circumstantial evidence, the ultimate question is the same: Is there record evidence from which a reasonable jury could find that age was a but-for cause of the complained-of employment action? 59 F.4th at 712 n.3; *see Hollis*, 153 F.4th at 381 (evaluating circumstantial evidence by proceeding directly to whether the record would allow for a finding that the plaintiff was not promoted because of her sex).

14

together, these facts create a "powerful inference" that Lee was not removed because of his age. *Evans*, 80 F.3d at 959 (finding a "powerful inference" of non-discrimination where the same person who hired the plaintiff made the decision not to promote her); *see Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 923–24 (7th Cir. 1996) (fact that the plaintiff was 50 years old when hired was "somewhat indicative of [employer's] lack of [age-]discriminatory intent"); *McNeal v. Montgomery Cnty.*, 307 F. App'x 766, 775 (4th Cir. 2009) (that a decisionmaker is "the same age or older than the plaintiff is circumstantial evidence against age discrimination"). But there is more: Lee was replaced by Konrad, who was *also* in his sixties at the time. That, too, militates against a finding of age discrimination. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996) (explaining that no inference of age discrimination can be drawn "from the replacement of one worker with another worker insignificantly younger").[4] Considered together, these key background facts create a "strong inference [] that [age] discrimination was not a determining factor" in Lee's removal as Chair. *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991); *see Lee II*, 2025 WL 649734, at *9.

---

[4] For the first time on appeal, Lee suggests that Konrad was not a genuine replacement and was instead asked to apply and then selected only to cover up UHA's age-discriminatory termination of Lee. But there is no record evidence to substantiate this late-breaking allegation, and indeed, Lee himself testified that he holds Konrad in high regard and considers him qualified to serve as Chair. Lee's "unsupported speculation" that UHA covered its tracks by hiring a different sexagenarian to replace him is "insufficient" to support a claim of age discrimination. *Evans*, 80 F.3d at 960; *see Bandy*, 59 F.4th at 712 (discounting "assertions [that] amount to little more than speculation").

Next is the undisputed evidence that Lee "was not meeting WVU's legitimate expectations" as to the Chair position. *Lee II*, 2025 WL 649734, at *8. Two senior administrators – neither of whom is alleged to have harbored age-based animus – raised concerns about Lee's performance as Chair in 2020, identifying serious issues like absenteeism and lack of engagement. Lee does not deny that these conversations occurred or contest the accuracy of the administrators' claims. And there is no dispute that the proffered expectations – that Lee report for work and participate in academic and clinical programs – are legitimate. Finally, there is no evidence that Lee showed meaningful improvement in those areas or even took steps to address the concerns that were raised with him.

Although Lee suggests otherwise, UHA has consistently taken the position that Lee "ha[d] not met expectations in his role as Chair." J.A. 207. It said so expressly in its August 18, 2021, email notifying Lee of his September 1, 2021, removal date, *id.*, and it has maintained that position throughout this litigation. We agree with the district court that the undisputed record evidence, even viewed in the light most favorable to Lee, shows just that. *Lee II*, 2025 WL 649734, at *8.[5]

_____

[5] Lee makes several efforts to undermine the evidence that UHA had legitimate concerns about his Chair performance, but they are unavailing. Lee points, for instance, to positive features of his written evaluations, two coworkers' opinions, and his receipt of annual bonuses as evidence that he was, in fact, meeting expectations. But neither his written evaluations nor his coworkers' opinions address the legitimate expectations at issue here. And while Lee did receive bonuses in 2020 and 2021, Rezai testified that such bonuses were awarded to all department chairs based on "system performance," not individual performance, J.A. 1785–87, and Lee offers no evidence refuting that testimony. (Continued)

16

To prevail on his age discrimination claim, it would not be enough for Lee to establish that "age was *one* of multiple motives" for his removal as Chair. *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (emphasis in original). Instead, he would have to prove that UHA "*would not have*" removed him "in the absence of age discrimination." *Id.* (emphasis in original). Here, we have multiple background facts suggesting that age was *not* a determinative factor, plus the uncontested fact that UHA *did* have concerns about Lee's performance as Chair. Taken together, that record evidence makes it impossible for Lee to show, as he must, that age was a but-for cause of his removal as Chair. Accordingly, we affirm the district court's entry of summary judgment for UHA on Lee's ADEA and WVHRA age discrimination claims.

**B.**

We turn next to Dr. Lee's claims of retaliation under the ADEA and the WVHRA. Lee alleges, first, that he was removed as Chair – and that UHA subsequently reduced his compensation and benefits – in retaliation for reporting Marsh's allegedly age-discriminatory remarks on July 29 and August 12, 2021, by way of his lawyer's letters to WVU and UHA administrators and counsel. And in the alternative, Lee argues, even if the removal itself was not retaliatory, then the decision to accelerate the *timing* of his removal – from the summer of 2022 to September of 2021 – was made to retaliate against him for his complaints of age discrimination.

---

We have considered Lee's remaining arguments and find them unpersuasive for similar reasons.

17

Again, we assume, like the district court, that Lee's removal as Chair at WVU and the acceleration of that removal constitute adverse actions for purposes of his employment as a clinical physician at UHA. On that assumption, Lee can prevail on his retaliation claim if and only if he can show a causal link between his protected activity – his complaints of age discrimination in the July 29 and August 12 letters – and the adverse action taken against him. And again, Lee bears the ultimate burden of proving but-for causation: that his removal, or the acceleration of his removal, would not have occurred but for his reports of age discrimination. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (explaining that the *McDonnell Douglas* framework "requires plaintiffs to prove that retaliation was the actual reason for the challenged employment action"); *see Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x 168, 172 (4th Cir. 2020) (applying the but-for causation standard to an ADEA retaliation claim, citing *Foster* and *Gross*, 557 U.S. 167). Lee does not dispute that the same standard governs under the WVHRA. *See Daniels v. DAL Glob. Servs., LLC*, 903 S.E.2d 588, 596 (W. Va. Ct. App. 2024) (applying the but-for causation standard to a WVHRA retaliation claim).

We agree with the district court that the evidence cannot support a finding that retaliation was the "real reason," *Foster*, 787 F.3d at 252, for Lee's removal as Chair or for the associated reduction in his compensation and benefits. But on Lee's contention that his removal was accelerated because of his complaints of age discrimination, we part ways with the district court and conclude that Lee has created a genuine dispute of material fact that cannot be resolved on summary judgment.

18

1.

To show a causal link between his removal and his protected activity, Lee relies exclusively on temporal proximity: He first complained of age discrimination in his lawyer's letter of July 29, 2021, and UHA formally notified him of his removal just three weeks later, on August 18, 2021. That kind of temporal proximity can, under some circumstances, be sufficient to survive summary judgment in a retaliation case. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006). The problem for Lee is the sequencing: The undisputed evidence shows that the "actions that led" to Lee's removal "began *before* [his] protected activity, belying the conclusion that a reasonable factfinder might find" that the protected activity is what caused the removal. *Id.* (emphasis in original).

As the district court explained, unrefuted testimony – including that of Lee himself – shows that the plan to remove Lee as Chair was well underway months before the July 29, 2021, letter was sent. *Lee II*, 2025 WL 649734, at *11. By March of 2021, Marsh and Rezai had decided to offer Lee a new position that would require him to step down as Chair, and they formally offered him that role in May of 2021. When Lee ultimately declined the new position, Marsh – according to Lee – "unequivocally" informed him, in May or June of 2021, that he would be replaced as Chair. J.A. 969. And Lee's own records confirm that every transition scenario Marsh proposed in their June 2021 discussions entailed Lee's departure as Chair. Indeed, that was the very purpose of the July 29, 2021, letter from Lee's lawyer – to negotiate the terms of Lee's departure and the "transition[] to a new Chair." J.A. 205. In short, Lee's removal was underway well before Lee first complained

19

of Marsh's allegedly discriminatory statements, which means that no reasonable jury could conclude, based on timing alone, that his complaint was the true reason for his removal. *See Francis*, 452 F.3d at 309; *Imungi v. Va. Commonwealth Univ.*, 2025 WL 2612761, at *4 (4th Cir. Sep. 10, 2025).

Lee advances one other version of a retaliation claim related to his removal. According to Lee, UHA separately retaliated against him when it "downgraded" his employment "immediately after his removal as Chair" on September 1, 2021, through the reduction of compensation and benefits and the loss of office space and administrative support. Appellant's Reply Brief at 9. But Lee nowhere disputes UHA's assertions, backed by competent evidence, that these conditions were tied to Lee's appointment as Chair. When that appointment was terminated, it followed as a matter of course that UHA adjusted the conditions of his employment pursuant to the terms of his employment agreements. Lee has not identified any genuine factual dispute as to this matter, and on this record, we see none. Even assuming, like the district court, that the "downgrades" Lee complains of constitute an adverse action in the form of a constructive discharge, *see Lee II*, 2025 WL 649734, at *10, this aspect of Lee's claim rises or falls with his removal claim. And because Lee cannot show that his protected activity caused his removal, he also cannot show that it caused the concomitant adjustments to his compensation, benefits, and the like.[6]

---

[6] In his opening brief, Lee also alludes to the "humiliation" he suffered when UHA announced his departure as Chair at a faculty meeting without notifying him in advance. But he does not argue that this incident, standing alone, rises to the level of an adverse (Continued)

2.

But Lee has a second and distinct retaliation claim, as well. As of June 2021, Lee points out, all the evidence shows that Marsh was contemplating a removal "scenario" in which Lee would stay on as Chair for at least another year, until the summer of 2022. But then, just weeks after Lee reported Marsh's allegedly age-discriminatory comments in his lawyer's July 29, 2021, letter, he was instead terminated almost immediately by way of UHA's August 18, 2021, removal notice. According to Lee, a reasonable jury could find that this decision to accelerate his removal – to withdraw the offer of a soft landing and substitute an immediate firing – was a response to his protected complaint of age discrimination just a few weeks earlier.

UHA does not dispute that, as described by Lee, this acceleration of an already-planned termination would constitute an adverse action with a close temporal nexus to protected activity. *See Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021) (a decision to take a "more drastic approach" to already-contemplated personnel changes can give rise to an inference of retaliation if it comes shortly after protected activity). Instead, it disputes the factual premise of Lee's claim. According to UHA, the record shows that the decision to accelerate Lee's removal *also* was made before the July 29, 2021, letter from Lee's lawyer. Both Marsh and Rezai testified that Lee's appointment

---

action in the form of a constructive discharge. *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (explaining that "difficult or unpleasant working conditions, without more," cannot establish a constructive discharge claim, especially when the challenged conduct is "isolated or infrequent").

21

was cut short as a result of the parties' earlier, unsuccessful July 22, 2021, meeting, when Lee refused to assist with transition efforts, ceased negotiations, and walked out of the room. And Rezai clarified that the decision to accelerate Lee's removal was made as soon as the meeting concluded on July 22 – a full week before Lee's first report of age discrimination on July 29. So a reasonable jury, UHA finishes, could only infer that the date of Lee's removal was moved up because of his conduct at the July 22 meeting, and not because of protected activity that had yet to occur.

The district court appeared to agree, rejecting Lee's claim because "the record shows" that Marsh and Rezai "accelerated" the timeline for Lee's removal when he "walked away" from the July 22 meeting. *Lee II*, 2025 WL 649734, at *11. And we do not doubt that a reasonable jury could credit the testimony of Marsh and Rezai and come to just that conclusion. But the question before us is whether a jury would be *compelled* to reach that conclusion, or whether the record, read in the light most favorable to Lee, gives rise to a genuine dispute of fact as to when and why a decision was made to accelerate Lee's removal. *See Evans*, 80 F.3d at 958–59 (setting out summary judgment standard). In our view, the record contains conflicting evidence on this crucial point, generating a factual dispute that cannot be resolved by way of summary judgment.

First, the parties have very different accounts of the pivotal July 22 meeting. Rezai and Marsh, as UHA emphasizes, both testified that Lee was uncooperative and refused to discuss a transition plan before abruptly walking out of the meeting. But Lee testified that he remained open to discussions about a transition and left the meeting only after Marsh

22

concluded the session by saying "we'll let the lawyers talk." J.A. 1060–61. According to Lee, he left Marsh's office believing that negotiations would continue among counsel.

Second, apart from Rezai's self-serving testimony, there is no evidence that the decision to accelerate Lee's removal was made at the end of the July 22 meeting. Both Marsh and Rezai admitted during their depositions that they never told Lee on July 22 that he would be removed as Chair immediately, rather than at the end of the next academic year as previously discussed. Rezai professed to believe it was "understood" from the context, J.A. 1671, but Lee's testimony was that he left the meeting unaware of any such understanding.

The first documentary reference to any removal date prior to the summer of 2022 comes in the August 18, 2021, removal notice itself – the email to Lee's attorney from counsel for WVU and UHA. And that notice does not say that the decision to remove Lee almost immediately was made on July 22. It says something very different: that the decision was made only "[a]fter much thought about the issues raised in [the] August 12, 2021 letter" sent by Lee's lawyer. J.A. 207. And the "issues raised" in that second letter from Lee's lawyer included a reiterated complaint about Marsh's allegedly age-discriminatory comments. They also included a concern about potential retaliation in the form of an accelerated removal schedule, which Lee's lawyer believed WVU and UHA had begun to contemplate in response to Lee's first report of age discrimination in the letter of July 29.

In sum, we have varying accounts of the crucial July 22 meeting between the parties. Then, on the one hand, we have Rezai's testimony, standing alone, for the proposition that

23

the decision to accelerate Lee's removal was made at the end of the July 22 meeting. And on the other, we have UHA's own description of the timing of that decision in its August 18 notice of removal. That notice came close in time to Lee's first and second reports of age discrimination on July 29 and August 12 – and it also, read most favorably to Lee, referred back to Lee's August 12 complaints of age discrimination and retaliation. None of this is to say that a jury could not credit and adopt UHA's account of these events and communications. But on this record, and drawing all reasonable inferences in favor of Lee, we think there are genuine factual disputes here that cannot be resolved on summary judgment. Accordingly, we vacate the district court's grant of summary judgment to UHA on Lee's acceleration-based retaliation claim.

That is not, however, the end of the matter. As noted above, the district court assumed but did not decide that Lee's removal from his Chair position at WVU constituted an adverse action with respect to his employment as a surgeon with UHA, and we have done the same for purposes of this appeal. This issue arises because WVU, though initially sued by Lee along with UHA, is no longer a defendant in the case. According to Lee, this should make no difference; UHA and WVU operated as his joint employers, with each of their actions attributable to the other. But the district court, recall, did not resolve the joint employer question, believing that Lee could not prevail on any of his claims regardless.

Consistent with our usual practice, we leave it to the district court on remand to address these issues in the first instance. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 687–88 (4th Cir. 2023). We decide today only that as to Lee's acceleration-based retaliation

24

claim, genuine issues of material fact preclude a grant of summary judgment on the ground relied on by the district court and defended by UHA on appeal.

## C.

We may dispense more briefly with Lee's breach-of-contract claim. According to Lee, UHA breached three provisions of the Professional Services Agreement ("PSA") that governed his employment with UHA. First, by removing him as Chair after only three years, UHA violated a five-year commitment memorialized in a May 22, 2018, letter agreement allegedly incorporated by reference into the PSA. Second, UHA removed him as Chair without satisfying the PSA's 90-day notice requirement. And third, UHA violated the terms and conditions set out in the PSA by reducing his compensation and benefits shortly after removing him as Chair.

Applying West Virginia law, the district court properly entered summary judgment for UHA.[7] First, as the district court explained, the PSA contains an integration clause barring consideration of other "negotiations, discussions, or understandings between the parties," J.A. 484 – which would include the May 22, 2018, letter agreement "confirm[ing] that [Lee's] leadership role as Chair of Neurosurgery w[ould] be a five (5) year commitment," J.A. 120. On appeal, Lee contends that UHA was nevertheless bound by

---

[7] The parties agree that the PSA, consistent with its choice-of-law clause, is to be construed and enforced in accordance with West Virginia law. We therefore apply West Virginia law to the breach-of-contract claim. *See Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 n.4 (4th Cir. 2019) ("Because the parties agree" on the law that applies, "we need not inquire further into the choice-of-law questions[.]").

this five-year commitment because it was incorporated by reference into the PSA. But the PSA language Lee invokes does not constitute a "clear" and "unmistakable" reference to the May 22, 2018, letter agreement, as West Virginia law requires for incorporation by reference. *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 752 S.E.2d 586, 598 (W. Va. 2013). Lee also cites *TD Auto Finance LLC v. Reynolds*, 842 S.E.2d 783 (W. Va. 2020), to argue that the PSA and the May 22, 2018, letter agreement should be construed together as part of one contract because they relate to the same subject matter. But that doctrine applies only when two agreements are "contemporaneously executed," *id.* at 790 (emphasis omitted), and here, the PSA was signed several months after the letter agreement. Finally, the purported five-year commitment conflicts with the express terms of Lee's WVU appointment letter, which provides for an initial one-year term subject to renewal and at-will employment, and the PSA, which provides for automatically renewable one-year terms and permits termination under specified circumstances.

Second, the PSA's 90-day notice requirement is triggered only if UHA decides not to renew the agreement. As the August 18, 2021, removal notice made clear, however, Lee's removal as Chair did not terminate his employment as a physician with UHA; instead, it transitioned him to part-time status. The district court was therefore correct in ruling that UHA was not required to provide 90 days' notice before removing Lee as Chair.

Third, the PSA expressly authorizes UHA to adjust Lee's compensation "[i]n the event of changes in [his] administrative duties or roles during the term of th[e] Agreement." J.A. 486, 488, 489. The WVU appointment letter contains a similar provision. Lee does not dispute that the reduction in his compensation following his removal as Chair – from

26

$1.25 million to $630,000 – was commensurate with the loss of income specifically designated for the Chair. Nor does he contest that his responsibilities as Chair accounted for 60% of his full-time employment, or that his status was in fact decreased by that proportion after his appointment was terminated. J.A. 207. Because nothing in the PSA or the WVU appointment letter entitled him to full compensation and benefits once he lost his title as Chair, he cannot prevail on this claim, either.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to UHA with respect to Lee's age discrimination claim, his retaliation claims predicated on his removal as Chair and his purported constructive discharge, and his breach-of-contract claim. We vacate the district court's entry of summary judgment to UHA as to Lee's remaining claims – namely, his ADEA and WVHRA retaliation claims alleging that UHA unlawfully accelerated Lee's removal as Chair in retaliation for his complaints of age discrimination. Those claims are remanded to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

27